2025–1346

---

# United States Court of Appeals for the Federal Circuit

---

## Google LLC,
*Plaintiff–Appellant*

v.

## Sonos, Inc.,
*Defendant–Appellee*

---

Appeal from the United States District Court for the Northern District of California in case no. 3:20-cv-03845-EMC, Judge Edward M. Chen

---

## Nonconfidential Reply Brief of Appellant Google LLC

---

Nathan K. Kelley
Jonathan I. Tietz
Perkins Coie LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005
(202) 654–6200
NKelley@perkinscoie.com
JTietz@perkinscoie.com

Jeffrey S. Gerchick
Patrick J. Stafford
Quinn Emanuel Urquhart
  & Sullivan, LLP
1300 I Street, N.W., Suite 900
Washington, D.C. 20005
(202) 538–8000
jeffgerchick@quinnemanuel.com
patrickstafford@quinnemanuel.com

Dan L. Bagatell
Perkins Coie LLP
3 Weatherby Road
Hanover, New Hampshire 03755
(602) 351–8250
DBagatell@perkinscoie.com

David A. Nelson
Quinn Emanuel Urquhart
  & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705–7400
davenelson@quinnemanuel.com

Patrick D. Curran
Quinn Emanuel Urquhart
  & Sullivan, LLP
111 Huntington Avenue, Suite 520
Boston, Massachusetts 02199
(617) 712–7100
patrickcurran@quinnemanuel.com

Counsel for Appellant Google LLC

September 19, 2025

**Confidential Material Redacted**

## TABLE OF CONTENTS

Table of Authorities ............................................................. iii

Table of Abbreviations ........................................................ v

Introduction ........................................................................ 1

Argument ............................................................................ 3

I. This Court should reverse or vacate the summary judgment of non-infringement under the Strong-Encryption Theory because the district court misconstrued both Google's arguments and the claim term "utiliz[ing]" a private key .............. 3

    A. Google and its expert did not concede that Sonos's Controller app is a "device within [the] domain of devices" that must "utilize" a private key to access protected digital content ............................................. 3

        1. Dr. Sherman's use of the word "device" was consistent with his infringement theory, and Sonos's contrary arguments at most create a factual dispute ......... 4

        2. The district court failed to account for Dr. Sherman's alternative theory under which the Controller is *not* a "device existing within the domain of devices" ............... 9

    B. A jury is entitled to find that all members of a synchronized Sonos player group indirectly "utilize" the ▮▮▮ private key in "accessing the protected digital content" .................................................................... 13

II. This Court should reverse or vacate the summary judgment of non-infringement of the "private key" limitation ...................... 18

    A. The intrinsic evidence does not support a requirement that the "private key" control a cryptographic algorithm ...... 18

        1. The intrinsic evidence does not limit a "key" to controlling message encryption or decryption ................. 19

　　　　2.　　The extrinsic evidence cannot override the intrinsic evidence and does not establish that a "private key" must control an algorithm rather than be a data input... 24

　　B.　　Sonos does not dispute the existence of a genuine dispute of material fact under Google's construction of "private key" ...............................................................27

III.　This Court should reverse the district court's ruling that a private key is "based on" domain information only when the domain information dictates which particular key issues ..............27

　　A.　　A key is "based on" domain information when it is issued as a result of a domain-information input and associated with that domain information.................................27

　　B.　　There is a genuine dispute of material fact regarding the "based on" limitation under each of Google's infringement theories ............................................... 32

Conclusion .......................................................................... 35

Certificate of Compliance with Type-Volume Limitation

Certificate of Authority

Certificate Regarding Confidential Material

Certificate of Service

*Notice Regarding Confidentiality*

Internal technical process information and source code designated by Sonos as confidential under the district court's protective order have been redacted from pages i, v, 1, 2, 8, 12, 13, 14, 15, 16, 17, 18, 34, and 35 of the public version of this brief and highlighted in <mark>magenta</mark> in the confidential version.

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

*Am. Med. Sys., Inc. v. Biolitec, Inc.,*
618 F.3d 1354 (Fed. Cir. 2010) ................................................................. 29

*Bennett Regulator Guards, Inc. v. Atlanta Gas Light Co.,*
825 F. App'x 773 (Fed. Cir. 2020) ........................................................... 24

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.,*
631 F.3d 1279, 1284 (Fed. Cir. 2011) ................................................. 16, 17

*Cioffi v. Google Inc.,*
632 F. App'x 1013 (Fed. Cir. 2015) .............................................................16

*Dell Fed. Sys., L.P. v. United States,*
906 F.3d 982 (Fed. Cir. 2018) ................................................................. 25

*GE Lighting Sols., LLC v. AgiLight, Inc.,*
750 F.3d 1304 (Fed. Cir. 2014) ............................................................ 20, 22

*Genuine Enabling Tech. LLC v. Nintendo Co.,*
29 F.4th 1374 (Fed. Cir. 2022) ................................................................ 24

*Intellectual Ventures II LLC v. Commerce Bancshares, Inc.,*
682 F. App'x 891 (Fed. Cir. 2017) .............................................................15

*Lexion Med., LLC v. Northgate Techs., Inc.,*
292 F. App'x 42 (Fed. Cir. 2008) ..............................................................15

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
358 F.3d 898 (Fed. Cir. 2004) ................................................................ 14

*Luv n'Care, Ltd. v. Laurain,*
98 F.4th 1081 (Fed. Cir. 2024) ................................................................. 4

*Masimo Corp. v. Sotera Wireless, Inc.,*
No. 2022-1415, 2023 WL 6307959 (Fed. Cir. Sept. 28, 2023) ................... 29

*MEHL/Biophile Int'l Corp. v. Milgraum*,
    192 F.3d 1362 (Fed. Cir. 1999) .................................................. 33

*Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*,
    122 F.4th 860 (Fed. Cir. 2024) ...........................................10, 11

*Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
    739 F.3d 694 (Fed. Cir. 2014) ................................................... 33

*Paskaly v. Seale*,
    506 F.2d 1209 (9th Cir. 1974) .................................................. 33

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................. 26

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
    378 F.3d 1396 (Fed. Cir. 2004) ................................................. 29

*RFCyber Corp. v. Stewart*,
    No. 2023-2418, 2025 WL 2350695 (Fed. Cir. Aug. 14, 2025) ...................16

*Roku, Inc. v. Universal Elecs., Inc.*,
    No. 23-1019, 2024 WL 3042701 (Fed. Cir. June 18, 2024) .......................15

*Simio, LLC v. FlexSim Software Prods., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020) ................................................. 32

*Tegal Corp. v. Tokyo Electron Am., Inc.*,
    257 F.3d 1331 (Fed. Cir. 2001) ................................................. 24

*United Techs. Corp. v. Chromalloy Gas Turbine Corp.*,
    189 F.3d 1338 (Fed. Cir. 1999) .................................................12

*WhereverTV, Inc. v. Comcast Cable Commc'ns, LLC*,
    No. 2023-2098, 2025 WL 2101946 (Fed. Cir. July 28, 2025) ...................29

**Confidential Material Redacted**

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Appx___ | joint appendix page ___ |
| BlueBr__ | Google's opening brief page __ |
| Google | plaintiff–appellant Google LLC |
| ███████ | household ███████ |
| RedBr___ | Sonos's response brief page __ |
| Sonos | defendant–appellee Sonos, Inc. |
| $(x{:}y\text{-}z)$ | column $x$, lines $y$ to $z$ |
| '187 patent | U.S. Patent No. 7,899,187 |

Confidential Material Redacted

## Introduction

Sonos's response brief confirms that the district court erred in granting summary judgment.

Regarding the limitation requiring "all devices within the domain of devices" to "utilize" a "private key," this Court should reject Sonos's invitation to follow the district court. In arguing that Dr. Sherman conceded away Google's Strong-Encryption Theory, Sonos takes his testimony out of context, and any credibility attacks are for the jury to assess. Sonos notes that the claims also require receiving domain information from a "device existing within the domain of devices," but it ignores that Dr. Sherman raised alternative infringement theories regarding that limitation, including one where Sonos's Controller is *not* a "device existing within the domain of devices." Unable to dispute that theory on the merits, Sonos argues that Google forfeited it, but Google undeniably raised it at summary judgment.

On the merits, Sonos fails to justify the district court's holding that synchronized Sonos players do not "utilize" the ███ private key as a matter of law. That conclusion was based on an erroneous and overly strict construction of "utilize." Properly construed according to its ordinary meaning,

**Confidential Material Redacted**

to "utilize" something means to make practical use of it. Sonos tries to distract from the error by framing the dispute as "active" versus "passive" utilization, but the real issue is whether a player must *directly*, rather than indirectly, utilize the private key for encryption. The '187 patent and this Court's case law do not support limiting the broad term "utilize" to direct use, and a jury should decide whether, in fact, synchronized Sonos players make practical use of the ███ internal technical process ███ private key.

Regarding the "private key" limitation, Sonos ignores that the '187 specification uses the term "key" to describe not only controlling encryption and decryption, but also generating or verifying a signature. Sonos professes concern about redundancy, but there is none—Sonos manufactures it by twisting Google's construction. Google's construction comports with the patent's description of generating and verifying signatures, whereas Sonos's construction excludes it. The intrinsic evidence supports Google's construction, and Sonos's narrowing limitations are functionally unnecessary, unhelpful for the invention's security goals, and unsupported by the intrinsic evidence. Sonos leans heavily on extrinsic evidence, but extrinsic evidence cannot trump the specification's broader usage, and Sonos overstates the extrinsic evidence anyway.

In defending the district court's deterministic construction of "based on," Sonos fails to justify requiring the use of domain information to determine which key is issued in the first instance. Sonos cites the specification, but the example there shows that the domain information is *associated* with the key, consistent with Google's construction. And Sonos's own analogies confirm Google's point that the ordinary meaning of "based on" is broad and not deterministic.

Because the district court erred in its claim constructions and genuine disputes of material fact remain under the correct constructions, this Court should reverse or vacate the grant of summary judgment.

### ARGUMENT

I.  **This Court should reverse or vacate the summary judgment of non-infringement under the Strong-Encryption Theory because the district court misconstrued both Google's arguments and the claim term "utiliz[ing]" a private key**

A.  **Google and its expert did not concede that Sonos's Controller app is a "device within [the] domain of devices" that must "utilize" a private key to access protected digital content**

As explained in Google's opening brief, the district court erred in holding that Google's expert conceded away Google's Strong-Encryption infringement theory by characterizing Sonos's software-based Controller as a

device within a Sonos "household." BlueBr24-31. The district court erred by misunderstanding Dr. Sherman's uses of the word "device" in varying contexts and by failing to consider his alternative opinion regarding the Sonos Controller. Sonos's response reprises the district court's errors and mistakenly asserts that Google forfeited Dr. Sherman's alternative theory even though Sonos responded to that theory and the parties extensively debated it below. RedBr26-35.

### 1.    Dr. Sherman's use of the word "device" was consistent with his infringement theory, and Sonos's contrary arguments at most create a factual dispute

Whether Dr. Sherman's references to a "device" and a single deposition answer undermined Google's Strong-Encryption infringement theory is a jury question that should not have been resolved at summary judgment, when all inferences had to be made against Sonos. *See Luv n'Care, Ltd. v. Laurain*, 98 F.4th 1081, 1100 (Fed. Cir. 2024).

Dr. Sherman's report opined that the set of playback devices within a Sonos "household"—the set that Dr. Sherman labeled the "'187 Accused Instrumentalities"—constitutes the claimed "domain of devices" that access protected digital content. Appx2738-2739 ¶197; *see also* Appx2381 (39:5-9). Google's Strong-Encryption Theory recognizes that Sonos's Controller is a

software application and accordingly not a device that needs to or does access protected digital content. Sonos agrees. Appx2253 (explaining that the "Controller never plays ... music"). The district court likewise recognized that the Controller does not utilize the private key to access protected digital content because it does not play protected content. Appx3379 (24:16-19).

Sonos claims that Dr. Sherman conceded away the Strong-Encryption Theory because he called the Controller a "device" in his report and then agreed in response to a deposition question that the Controller is part of the claimed "domain of devices." RedBr29, RedBr33-34. But the context of the question and answer on which Sonos relies shows why Dr. Sherman's answer and his use of the word "device" did *not* amount to a concession of non-infringement.

In the deposition, Sonos's counsel told Dr. Sherman that he was going to ask him about paragraph 113 of his report. Appx2380 (36:5-8). That paragraph and the preceding two pages discussed how a player joins a Sonos household. Appx2683-2686 ¶¶ 108-113. In those pages, Dr. Sherman described the Sonos household with reference to a diagram that showed the '187 Accused Instrumentalities, a smartphone loaded with the Sonos App, and the home network (labeled "Home LAN") within the household:



Appx2683. Dr. Sherman opined in his report that "[a] household is a domain of devices because it is a network of up to 32 '187 Accused Instrumentalities on the same IP subnet that are enabled to communicate with one another." Appx2718 ¶ 170.

At the deposition, Sonos's counsel asked Dr. Sherman two questions back-to-back. The first was whether his opinion was that a Sonos household corresponded to the claimed concept of a "domain of devices." Appx2381 (39:5-9). He agreed that the two corresponded because that was how he had mapped the claims to Sonos's household in his report, in which the playback devices, but not the Controller, were labeled '187 Accused Instrumentalities.

Appx2682-2683 ¶ 107; *see also* Appx2808 ¶ 291 (explaining that "the domain of devices refers to the user's household comprising '187 Accused Instrumentalities"). The next question asked Dr. Sherman to confirm that the Controller is part of the "domain of devices," and he agreed that it is. Appx2381 (39:12-15).

Read in context, Dr. Sherman's agreement that the Controller is within the claimed "domain of devices" was consistent with his position that the "domain of devices" corresponds to the Sonos household, which in turn includes the players and the Sonos App (Controller). That is how his report depicted the Sonos household, which is what the preceding question asked about. If Dr. Sherman had been asked whether the home network was part of the "domain of devices," he could have answered "yes" to that too without departing from his opinion because the figures in his report showed the players, the Sonos App, and the home network all within the Sonos household, which he equated with the "domain of devices," Appx2808 ¶ 291.

Dr. Sherman's report likewise used the word "device" to refer to a member of a household. *See* Appx2739 ¶ 198 (equating "a device … within the domain of devices" to a "member of the household"); Appx2744 ¶ 206 (same); Appx2745 ¶ 208 (describing a device in the domain of devices as a

household member); Appx2747 ¶ 212 (distinguishing between the Controller and "an existing '187 Accused Instrumentality" while saying both are in the household and within the "domain of devices"). But although Dr. Sherman referred to both the Controller and the '187 Accused Instrumentalities as "devices," he did not identify the Controller as an '187 Accused Instrumentality. BlueBr28-29 (citing Appx2739 ¶ 198, Appx2808 ¶ 291). And he opined that the '187 Accused Instrumentalities all use the ███ private key to access protected digital content, not that the Controller does. *See, e.g.*, Appx2859-2861 ¶¶ 379-380.

Sonos's argument that Google is advocating differing interpretations of "domain of devices," RedBr31, similarly ignores Dr. Sherman's position that the Sonos household corresponds to the claimed "domain of devices." Sonos is free to disagree with Dr. Sherman's mapping of the asserted claims to the Sonos household. But whether Dr. Sherman conceded away Google's case by using the word "device" imprecisely and agreeing that the Controller was a "device" in the context of questions about a Sonos household is at least a disputed question of fact that the district court should not have resolved in Sonos's favor at the summary-judgment stage.

– 8 –

**2.   The district court failed to account for Dr. Sherman's alternative theory under which the Controller is *not* a "device existing within the domain of devices"**

Sonos barely responds to the merits of Google's argument about Dr. Sherman's alternative opinion that the Controller is *not* a "device" within the "domain of devices" and thus need not utilize the private key to access protected digital content. Under that theory, the accused Sonos products infringe the limitation requiring a newly added device to receive domain information "from a device existing within the domain of devices" because the Controller simply forwards domain information received from another player in the household. *See* Appx2745-2746 ¶209.

Rather than responding on the merits, Sonos faults Google for "never articulat[ing]" how domain information can be *from* an existing player "when the domain information that a new Sonos player actually receives comes from the Controller." RedBr34. But the claim language does not require receiving domain information *directly* from a "device within the domain of devices." And Google articulated its reasoning during the summary-judgment hearing when its counsel explained that under Dr. Sherman's alternative analysis the Controller is "merely a relay, a center man to facilitate

communication." Appx3384 (29:13-14). By the same token, a birthday card comes "from" its sender even when it is delivered by a mail-carrier.

Sonos does not dispute that the Controller receives domain information from an existing player and passes it along to a new player joining the household. Sonos instead suggests that Dr. Sherman's alternative theory is "unsupported expert opinion[]." RedBr34-35 (citing *Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*, 122 F.4th 860, 875 (Fed. Cir. 2024)). Not so. Dr. Sherman explained in detail how the Controller operates when a new player is added to a household, specifically pointing out that the Controller receives domain information from an existing player in the household and passes that information on to the new player. Appx2686-2687 ¶¶ 114-117.

Dr. Sherman's detailed explanation of the Controller's actions bears no resemblance to the testimony found insufficient the cases Sonos cites. In *Mirror Worlds*, the dispute was how an accused system worked—specifically whether one of its components stored a particular type of data. 122 F.4th at 866. On appeal, Mirror Worlds cited its expert's report and argued that the accused component necessarily stored the claimed data because it stored *all* system data. *Id.* at 874. This Court rejected that argument because the expert's report did not generalize about storage of all data, and the expert did

not discuss the specific data that allegedly were not stored by the accused component. *Id*. at 875. Here, in contrast, Dr. Sherman specifically explained how the Controller passes on domain information from an existing player to a new player. Appx2686-2687 ¶¶ 114-117.

Sonos's charge that Google forfeited its arguments about Dr. Sherman's alternative analysis, RedBr35, is also baseless. Google's counsel discussed the alternative theory at length during the summary-judgment hearing, Appx3376-3384, and even read a portion of Dr. Sherman's expert report into the record, Appx3383 (28:13-18) (quoting Appx2745 ¶ 209). Google's counsel began his discussion of the Strong-Encryption Theory by explaining that Dr. Sherman had "two alternative theories, one in which the controller is part of the domain of devices *and one in which it is not part of the domain of devices*." Appx3376 (21:10-12) (emphasis added). Google's counsel referred to and explained the second theory throughout the ensuing discussion. *See, e.g.*, Appx3377 (22:17-24) (referring to "two alternative theories" and explaining that the Controller "merely relays the information" under the second theory); Appx3380 (25:18-19) (referring to Dr. Sherman's "alternative theory"); Appx3381 (26:20-23) (referring to ¶ 209 and his discussion of the scenario under which "the controller is not considered a device within the

Confidential Material Redacted

domain of devices"); Appx3384 (29:6-19) (explaining Dr. Sherman's alternative theory).

Google certainly has not raised this theory for the first time on appeal, as Sonos suggests at RedBr35. Google's extensive presentation of Dr. Sherman's alternative theory during the hearing sufficed to preserve the issue for appeal. *See, e.g.*, *United Techs. Corp. v. Chromalloy Gas Turbine Corp.*, 189 F.3d 1338, 1344 (Fed. Cir. 1999) (finding waiver argument unpersuasive in view of the statements made at district-court hearing). Notably, Sonos did not accuse Google of raising a new theory during the hearing—and it could not have done so credibly because its own summary-judgment papers acknowledged Dr. Sherman's alternative analysis excluding the Controller from the "domain of devices." *See* Appx2253 (arguing that "even if the Controller is excluded from the set of devices within the domain, all devices do not 'utilize[ ]' the private device key—only the 'channel source' [i.e., ███████████ ] makes use of it because only the channel source performs decryption"). At the hearing, Sonos's counsel argued that *Sonos* had not challenged Dr. Sherman's identification of the Controller as a "device within the domain of devices." Appx3384-3385 (29:25-30:21). But *Google's* counsel made clear that *Google* was still relying on Dr. Sherman's alternative analysis under which

the Controller is *not* a "device existing within the domain of devices" and the new player obtains the domain information from another player in the domain via the Controller. Appx3376-3384.

**B.  A jury is entitled to find that all members of a synchronized Sonos player group indirectly "utilize" the ██████ private key in "accessing the protected digital content"**

Sonos also fails to justify the district court's ruling that synchronized Sonos players do not "utilize" the ██████ private key as a matter of law. Sonos's non-infringement argument presumes that the claims require each player in the domain to perform decryption directly and locally with the ██████ private key. But they do not. They simply require each player in the domain to "utilize" the ██████ private key in "accessing the protected digital content." A jury is entitled to find that each synchronized player indirectly "utilizes" the ██████ player's private key in accessing encrypted content because use of that key gives all the players access to that content.

Sonos argues that "utilizing" something requires actively using it. RedBr37-38. But the issue here is not "active" versus "passive" use. The issue is whether the non-██████ players must *directly* use the private key for local encryption or whether they may *indirectly* use the private key by having the ██████ player perform the decryption for them and forward

– 13 –

**Confidential Material Redacted**

the resulting unencrypted data. Sonos argues that the '187 patent does not describe the latter, but claims are not limited to the disclosed embodiments. *See, e.g., Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004). The claims require "utilizing" (making practical use of) the private key "in accessing the protected digital content," and a jury is entitled to find that Sonos's non-███████ players do so.

Recognizing the breadth of "accessing the protected content," Sonos argues that the word "utilize" itself "restrict[s] how devices within the domain access protected content." RedBr40-41. Sonos again misreads the claims. The claim language requires the private key to be "utilized by all devices within the domain of devices" "for use in accessing the protected content." Appx67 (8:5-8). Google's reading does not ignore "utilized by all devices" because Google is accusing a set of players that all utilize the controller's private key to access protected content. And "utilized by all devices" is not superfluous because the required "use in accessing the protected digital content" must be by way of the ███ private key.

Sonos next doubles down on its bus analogy and offers an even more far-fetched power-plant analogy. RedBr41-42. But neither of those hypotheticals requires a particular use, and that ambiguity lets Sonos make its point

without confronting Google's. The claims here do not merely recite utilizing

the private key; they further recite what the private key must be utilized for:

"accessing the protected digital content." Regardless of whether each Sonos

synchronized player *directly decrypts* protected digital content, they all *utilize*

(make practical use of) the ██ private key to access protected content.

Sonos's efforts to distinguish Google's cases are unavailing. As Google

has explained, BlueBr34-35, many Federal Circuit decisions have held that

terms such as *analyzing*, *sensing*, and *identifying* do not require direct perfor-

mance of those actions. Sonos's granular distinctions of the facts of those

cases ignores their broader, consistent message that a limitation reciting an

action does not necessarily require direct performance of that action. *See In-*

*tellectual Ventures II LLC v. Commerce Bancshares, Inc.*, 682 F. App'x 891, 894

(Fed. Cir. 2017) (explaining that the ordinary meaning of "analyzing data"

did not require "direct raw-data analysis"); *Lexion Med., LLC v. Northgate*

*Techs., Inc.*, 292 F. App'x 42, 49 (Fed. Cir. 2008) (explaining that temperature

"sensing" did not require direct temperature measurement); *Roku, Inc. v.*

*Universal Elecs., Inc.*, No. 23-1019, 2024 WL 3042701, at *2 (Fed. Cir. June 18,

2024) (holding that the term "data that functions to identify a controllable

function of the controllable appliance" did not require the data alone to

identify the function); *see also RFCyber Corp. v. Stewart*, No. 2023-2418, 2025 WL 2350695 (Fed. Cir. Aug. 14, 2025) ("prepar[ing] data" did not require active generation or computation).

Sonos distinguishes *Cioffi v. Google Inc.*, 632 F. App'x 1013 (Fed. Cir. 2015), in which this Court held that the claimed "web browser process" did not require *direct* network access, on grounds that a dependent claim there required "direct[]" exchange of data with the network. RedBr44. But that distinction does not help Sonos because the '187 claims do not require direct utilization. Just as web-browsing did not require direct data exchange, "utilizing" a private key does not require directly using the key on-site.

Sonos also misreads *Centillion Data Systems, LLC v. Qwest Communications International, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011), when it argues that "[h]ere, there is no sense in which the other players in a group 'control' the ▮internal technical process▮ private device key." RedBr45. The issue *Centillion* addressed was whether customers could "use" a system over which they *lacked* direct control. 631 F.3d at 1284. Holding that customers *did* "use" the system at issue *despite* lacking direct control over it, this Court focused on the fact that the customers subscribed to the service that controlled the system and

derived benefits from its use. *Id.* at 1285. The same logic applies here: individual Sonos players seek to join the domain, and once joined they rely on and benefit from the ███████████████ decryption of the protected digital content with the private key.

Sonos's rebuttal of Google's claim-differentiation argument similarly fails. As Google explained, dependent claim 6 adds the step of "utilizing the private key to decrypt a second encryption key, the second encryption key utilized to decrypt digital content." BlueBr36 (quoting Appx67 (8:31-32)). The district court's reasoning that "only ████ device uses the private key to decrypt music" demanded more than claim 1's "accessing the protected digital content" limitation requires.

Sonos's counterarguments at RedBr45-46 lack merit. *First*, Google did not forfeit this point because it could not have anticipated that the district court was going to import the narrower use of claim 6 into claim 1. Sonos's motion did not argue for that narrower use; it instead referred to gaining "access" to protected content. Appx2255-2256. *Second*, Sonos's assertion that the district court did not import the specific use of claim 6 into claim 1 is wrong. Sonos admits that when the district court used the phrase "decrypt

music," Appx29, it used it "as shorthand for the longer process" of decrypt-

ing a content-extraction key that in turn decrypts protected content.

RedBr40 n.4. *Third*, Sonos is wrong in contending that claims 1 and 6 differ

only in that claim 1 requires the private key to "directly decrypt" the pro-

tected content, whereas claim 6 requires "a nested process." RedBr46. Claim

1 does not say "directly decrypt"; it says that the private key is used for "ac-

cessing the protected digital content." Appx67 (8:6-7). The accused Sonos

functionality satisfies claim 1's broader language because all grouped play-

ers access protected digital content using the ██████████████████ private key.

## II.  This Court should reverse or vacate the summary judgment of non-infringement of the "private key" limitation

Google's opening brief explained why the district court erred in impos-

ing additional, unrecited limitations that the claimed "private key" must be

"designed to control a cryptographic algorithm" and must not be used

"solely as the data input" to a cryptographic algorithm. BlueBr37-48. Like

the district court, Sonos's response brief relies on narrow disclosures in ex-

trinsic evidence even though the disclosures in the '187 patent are broader.

### A.  The intrinsic evidence does not support a requirement that the "private key" control a cryptographic algorithm

Sonos improperly addresses the term "private key" in isolation from

the disclosure and other claim language and from a perspective that elevates extrinsic evidence over the patent's specification. Properly read in the context of the specification, the claim language identifies what the "private key" may be and does not require that it control an algorithm.

### 1. The intrinsic evidence does not limit a "key" to controlling message encryption or decryption

As Google's opening brief explained, BlueBr38-45, neither the claim language nor the specification requires the claimed "private key" to control an algorithm. The claim language identifies what characteristics the claimed key must have: it is "utilized by all devices within the domain of devices," private, and "for use in accessing the protected digital content." Appx67 (8:2-8). The drafters did not require that the "private key" be "for use in *decrypting* the protected digital content" or "for use in *controlling a cryptographic algorithm to decrypt* the protected digital content." The claims *encompass* a key that controls a cryptographical algorithm, *see* Appx67-68 (claims 6, 8-9, 14), but they are not *limited* to that embodiment.

Google also explained, BlueBr43, and Sonos has not disputed, *see* RedBr51-52, that the algorithmic-control function is neither critical for the invention to work nor mandated by any other claim language. Unlike in

*GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304 (Fed. Cir. 2014), the '187 patent does not describe control over encryption as "very important … in an aspect of the present invention," and the specification does not "disparage[ ] alternatives" to it. *Id.* at 1309 (cleaned up).

Rather than requiring private keys to control encryption or decryption, the specification discloses that private keys may be used for "generating … or verifying digital signatures." Appx64 (2:47-49). That additional language would be redundant if Sonos were correct that the only permissible role of a private key in a generating/verifying process is to encrypt or decrypt data. Sonos fails to grapple with the specification's more expansive language and the redundancy the narrow construction creates. Sonos also fails to address the facts that (a) "generating a signature" for verification requires *two* inputs—the signature to be encrypted (e.g., a token) and the key that controls encryption—and (b) verification of the signature succeeds only if both inputs are correct. *See* BlueBr41-42.

Sonos argues that signing and verifying involve encryption and that a signature is analogous to an encrypted message. RedBr59-62. But that description supports Google's construction, not Sonos's: if private keys in

signing and verification processes always provided the same encryption control that they provide in encrypting message data, the specification would not say that private keys are used for "*either* decrypting data *or* generating digital signatures" and "*either* encrypting data *or* verifying digital signatures." Appx64 (2:47-49) (emphases added). The reference to generating and verifying signatures is necessarily broader. Sonos argues that "a claim need not cover every embodiment," RedBr62-63, but Sonos's construction reads out language that the specification uses to explain what roles private keys may play, not just a particular embodiment. Sonos identifies no intrinsic evidence compelling such a disfavored exclusion.

Sonos endorses the district court's misconception that anything that can be input into a cryptographic algorithm would be a "private key" under the district court's original construction. RedBr52-53. The claim language makes clear that the claimed key must be utilized to control access to protected digital content, be kept private, and come from a key issuer. Appx67-68. The original construction also restricted the claimed key to a key "used as an input … such that, without the key, the output of the algorithm cannot be computed." Appx38. Those are substantial limits, and Google has not contended that "private keys" encompass all input data.

Sonos insists that the '187 patent "repeatedly confirms the distinction between the key input and the data input," RedBr49, but Sonos oversells what the specification says. Sonos says the "private key" is used to "access[ ] the protected digital content." *Id.* (citing Appx67 (8:7-8)). But that statement applies equally to a private digital signature or authentication token without which access is restricted. Google's construction recognizes this; Sonos's does not. Sonos also cites the description of a "private key" used to "decrypt the content encryption key," *id.* (citing Appx66 (6:57-62)), but that passage describes a particular embodiment involving "DRM private key 206" and does not limit *all* private keys. *See GE Lighting Solutions*, 750 F.3d at 1309 (improper to read in limitations from embodiment "absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited" (citation omitted)).

Sonos also insists that the specification "uses the term 'data' to describe the input that is an algorithm's object," RedBr49 (citing Appx64 (2:65-66)), but Sonos again points to an example, not limiting or definitional language. The cited example is inapposite anyway because it refers to the "digital object" to which the "digital signature is *attached*," Appx64 (2:59-67) (emphasis added)—not to the signature or authentication key itself.

Contrary to Sonos's suggestion, RedBr49, the passages it cites provide no "clear" statement that a "private key" *cannot* function as "the data input" to a cryptographic algorithm. The specification establishes no such object/control dichotomy. Sonos's arguments otherwise assume their conclusion by reverting to an assumption that a "private key" must control an algorithm. The Court should reject such circular logic.

Sonos does not dispute that the specification describes a "private key" that is itself encrypted (i.e., functions as the object of a cryptographic algorithm): a "content encryption key." Appx65 (4:53-56). Sonos responds that the "content encryption key" in that passage is a cryptographic key "because it functions to decrypt protected content in a different cryptographic algorithm." RedBr50 (citing Appx65 (4:52-56)). But Sonos is speculating. The specification merely says that the encrypted encryption key is "needed to render (execute) the digital content," Appx65 (4:52-56). It does not say that the key must decrypt that content.

In short, nothing in the intrinsic record mandates that the "private key" *control* a cryptographic algorithm rather than being data input into one.

## 2. The extrinsic evidence cannot override the intrinsic evidence and does not establish that a "private key" must control an algorithm rather than be a data input

Sonos's reliance on extrinsic evidence is unavailing.

For starters, Sonos cannot wish away the evidence-hierarchy problem that pervades its analysis. Google's opening brief explained that precedent rejects using extrinsic evidence to limit claim scope in a manner not contemplated by the record. BlueBr46-47 (citing *Genuine Enabling Technology*, *Bennett Regulator Guards*, and *Tegal*). Sonos all but ignores those cases, arguing that they "have no bearing" because the district court supposedly did not start with the extrinsic evidence. RedBr59. But the district court did just that by delving into the meaning of cryptographic keys "[b]efore turning to" the intrinsic evidence. Appx41. That discussion concluded that a key "controls the algorithmic function," Appx41, or "controls the encrypting and decrypting algorithm," Appx42; *see also* Appx44 ("controls the encryption"/"decryption"). The district court started and ended with that control requirement. It did not consider extrinsic evidence only "after canvassing the intrinsic evidence," as Sonos argues at RedBr53.

Sonos commits the same legal error. It starts by citing extrinsic evidence about the meaning of a "private key," presupposes its construction as

the starting point, and builds its argument from that premise. RedBr47-48. In claiming that the district did not elevate extrinsic evidence over intrinsic evidence, Sonos cites the district court's recitation of the law, RedBr58-59 (citing Appx37), but its argument elevates form over substance. What matters is "which legal standard the tribunal applied, not which standard it recited." *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 992 (Fed. Cir. 2018) (emphasis omitted).

The extrinsic evidence does not support Sonos's narrow construction anyway. To begin with, Sonos overreads its dictionary entries. It insists that they confirm that a key "controls the algorithm," but none actually says so—each definition is more general. *See* RedBr54-55. Nor do they define a key as "the thing that acts upon data, information, or a message," *contra* RedBr54. Moreover, the definitions focus on the context of encrypting and decrypting messages without regard to the authentication/signature context that the '187 claims also encompass.

The experts did not "establish[]" that a private key *exclusively* "control[s] a cryptographic algorithm," as Sonos suggests at RedBr55-56. Dr. Wicker testified that a key is "commonly understood" in the field as controlling an algorithm, Appx1448, but he provided no support for that

assertion, and "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful," *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (en banc). As for Dr. Sherman, his statements that "an input to a cryptographic algorithm where the algorithm is designed such that if you don't know the key, you cannot compute its output," Appx1515, and that "a string of characters … [that] can be used in asymmetric encryption systems, symmetric encryption systems or for some other purpose, such as for computing a digital signature," Appx1192, were broader and fully aligned with Google's construction.

Sonos cites the clear-error standard, but the intrinsic record controls regardless of any findings regarding extrinsic usage, and the intrinsic record shows a broader meaning here. Moreover, the district court did not make any finding about a universal meaning of the term "private key" in the art. It just found the extrinsic evidence consistent with Sonos's position and concluded that that evidence supported its construction. Appx56. Sonos argues that Google presented no extrinsic evidence of data inputs *expressly* labeled "private keys." But Google did not need to cite extrinsic evidence because the '187 patent itself uses the broader meaning.

Ultimately, Sonos presented evidence that the term "private key" *includes* inputs that control an algorithm, but it did not establish that the term *excludes* input data that are required to compute the output of the algorithm.

### B. Sonos does not dispute the existence of a genuine dispute of material fact under Google's construction of "private key"

Google's opening brief explained why there is a factual dispute over whether authTokens in Sonos's AppLink authentication process satisfy the "private key" limitation. BlueBr48-49. Sonos does not dispute that a genuine issue exists under Google's construction; it argues only that Google's construction is incorrect. *See* RedBr46-48. This Court should therefore reverse the summary judgment if it adopts Google's construction.

### III. This Court should reverse the district court's ruling that a private key is "based on" domain information only when the domain information dictates which particular key issues

### A. A key is "based on" domain information when it is issued as a result of a domain-information input and associated with that domain information

The limitation requiring issuance of a private key "based on the domain information," Appx67-68 (8:1-5, 9:4-9), requires only that the domain information be a *factor* in issuing the private key, not *determinative* of it. BlueBr51-56. The broad ordinary meaning of "based on," the surrounding

claim language, and the specification's description all support that conclusion. *Id.* The district court erred in requiring that domain information be "used to determine which key is issued in the first instance" rather than "produced 'in consequence' of the domain information." Appx17.

Sonos reconstructs Google's construction and then attacks that strawman. Like the district court, Sonos conflates the domain information itself with the act of providing that information. The district court erred by inserting the word "providing" into Google's proposed construction, Appx13-14, and then declaring the altered construction superfluous. Sonos does the same when it insists that Google's construction requires a "merely causal" relationship already captured by the claim language reciting that "providing the domain information" causes the key issuer to issue the private key. RedBr65. Sonos conflates the key being based on *provision* of the domain information (e.g., triggered by that event) with the key being based on the information itself (e.g., associated).

Like the district court, Sonos relies on supposed superfluity, Appx16-17, but that argument mischaracterizes Google's construction. As Google has explained, BlueBr53-54, the limitations are different, not duplicative. Sonos dismisses Google's examples as "difficult-to-understand," but it does not

address their merits and has not shown that they are incorrect. RedBr69.
Sonos's argument that superfluity is disfavored, RedBr65 (citing *Power
Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004)), fails
because no term is superfluous. Indeed, *Power Mosfet* supports Google even
if Sonos were correct that there is some overlap: this Court adopted a con-
struction that rendered some language superfluous because "neither the
plain meaning nor the patent itself command[ed]" otherwise. 378 F.3d
at 1410.

Sonos has no answer to Google's point that the drafters would have
used narrower language had they intended the deterministic construction
Sonos urges. *See* BlueBr52. The drafters chose the looser phrase "based on"
rather than more restrictive language such as "wherein the domain infor-
mation determines which private key issues in the first instance." *See Wher-
everTV, Inc. v. Comcast Cable Commc'ns, LLC*, No. 2023-2098, 2025 WL
2101946, at *6 (Fed. Cir. July 28, 2025) (declining to limit claims to narrower
meaning where patentee "could have included language in the claims to that
effect" if narrower meaning were intended); *Masimo Corp. v. Sotera Wireless,
Inc.*, No. 2022-1415, 2023 WL 6307959, at *2 (Fed. Cir. Sept. 28, 2023) ("based
on" was a broad term that contemplated additional triggers); *Am. Med. Sys.,*

*Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1361 (Fed. Cir. 2010) ("based upon" phrase was not definitional).

Sonos also errs in contending that the specification supports its view. RedBr66, RedBr71-72. The key-issuance example describes issuing a private key that is associated with the domain information and selected in consequence of it. Appx65 (4:29-41). The example "checks the domain information," issues an associated key if one exists, and generates and issues a new key if none exists. Appx65 (4:30-41). Sonos argues that return of an already associated key shows deterministic key issuance. RedBr65-66. But that ignores the other half of the picture. The district court construed "based on" to require that the domain information be "used to determine which key is issued *in the first instance*." Appx17 (emphasis added). The first-instance issuance in the example does not involve a lookup or deterministic delivery. It involves issuance of a new key, and the specification requires only creation of an associated "key pair." Appx65 (4:30-33).

Sonos also has no valid answer to Google's point that using the content of the domain information to pick the private key in the first instance would exacerbate security concerns, BlueBr55-56. Sonos downplays those concerns by insisting that the construction "does not require pure one-to-

one determinism," so a hacker could not guess the key from the domain information alone. RedBr70. But it would still present a security problem, just as including your birthday as *part* of your password makes it easier to guess. Sonos also downplays those concerns by contending that the patent itself describes deterministic selection. RedBr70-71. But Sonos cites the lookup table for an *already associated* key—not any determinism in issuance of a key *in the first instance.* Appx17.

Sonos's concerns about "absurd results" are overblown. RedBr72-73. Sonos argues that under Google's construction someone "sen[ding] a paperback of *The Count of Monte Cristo* to a director before she started filming *any* movie" would make any later movie "based on" the book. RedBr73. But mere tendering of a book would not make the movie in consequence of or associated with that book. Likewise, Sonos finds it "troubling" that an argument need only be "associated" with the record to be "based on" it. RedBr72. But an argument associated with a document in the appendix would be "based on" the record whether compelling or not, just as an argument about another document unassociated with the record would *not* be "based on" the record.

Sonos's coffee and DMV examples miss the mark because they conflate basing something on *providing the information* with basing something on the *information itself*. RedBr69-70. In any event, your driver's license number *would* be "based on" your eye color if the DMV uses eye color as identifying information to determine whether you have a license number already or need a new one, and which coffee order you are handed at the counter *would* be "based on" your name if your name is used to keep track of the drink after ordering it. The takeaway from the analogies is that "based on" has a broad, capacious ordinary meaning, not a narrowly circumscribed one.

### B.    There is a genuine dispute of material fact regarding the "based on" limitation under each of Google's infringement theories

Sonos barely addresses Google's arguments showing a genuine dispute of material fact, BlueBr56-61. Sonos instead insists that this Court cannot reach those arguments until the district court writes an opinion addressing them. RedBr73-74. But the district court entered final judgment, and this Court reviews de novo. Deciding whether there is a genuine dispute requires no fact-finding, and a genuine dispute exists on this record. This Court may consider alternative arguments briefed below even if the district court did not reach them. *See, e.g., Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d

1353, 1365-66 (Fed. Cir. 2020) (determining that plaintiff had not shown good cause under Rule 16(b)(4) to amend complaint even though district court had not reached that issue); *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1366 (Fed. Cir. 1999) (addressing anticipation by publication, even though district court did not reach that issue, because of support in the record). Sonos cites *Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 705 n.6 (Fed. Cir. 2014), but there neither side briefed the alternative issues or asked this Court to resolve them. *See* Appellant's Br., *Pac. Coast Marine Windshields Ltd., v. Malibu Boats, LLC*, No. 13-1199 (Fed. Cir. Apr. 12, 2013), ECF No. 25; *id.*, ECF No. 33 (Appellee's Br.) (June 24, 2013). Here, in contrast, the record is sufficient because the parties briefed this issue below, Google briefed it on appeal, and Sonos "had the opportunity to discuss it," *Paskaly v. Seale*, 506 F.2d 1209, 1211 n.4 (9th Cir. 1974).

Sonos understandably does not want to address the facts: its efforts to backtrack from the narrowness of the construction walk it into a factual dispute over the extent to which the household information must influence the private key. On appeal, Sonos argues that there need only be "some" deterministic relationship, RedBr71, that the domain information need only be

"an input" among others, RedBr67, and that "the district court's construction does not require that the domain information alone dictate[] the exact private key that issues," *id.* Sonos also agrees that the domain information need only be used "to some extent" in key issuance. *Id.* Under those understandings, Google has triable claims under both of its infringement theories:

- **Strong Encryption:** The private device key is undisputedly generated in response to a "prepare registration" request, and the ███ is input to generate that request. BlueBr57-58. A reasonable jury could infer that the ███ has "some" influence (RedBr71) on which private device key issues—otherwise there would be no reason to supply it as an input. In passing, Sonos insists that the "household ID is not even an input into the function that generates the private device key," RedBr63-64, but Sonos again exaggerates the record. Sonos argued only that two particular code functions within the key-issuance process do not take the ███ as an input, *see* Appx2260, not that the overall key-generation process does not. Google explained why a reasonable jury could infer that the overall key-generation process takes the ███ as an input, and Sonos has not addressed the arguments in Google's opening brief on this point. BlueBr57-58.

**Confidential Material Redacted**

- **Authentication:** The ▮▮ is undisputedly used to determine whether a new authToken (for a new household) or a previously generated authToken (for an existing household) issues. BlueBr58-59. When obtaining the authTokens, Sonos players call a function that take the ▮▮ as an input; the system requires those tokens to be household-specific; and third-party providers store associations between authTokens and ▮▮ BlueBr59-60. Reasonable jurors may infer that the ▮▮ has at least "some" influence (RedBr71) on which authToken issues. Sonos says "Google had no evidence of whether or how the domain information is used to determine the authToken" because Google did not take third-party discovery, RedBr64, but that is mistaken for the reasons explained in Google's opening brief, BlueBr58-61, which Sonos has not rebutted. Sonos's objections go at most to persuasiveness of the evidence, which is a jury issue.

## Conclusion

The Court should reverse or vacate the judgment of non-infringement and remand for further proceedings.

Respectfully submitted,

QUINN EMANUEL URQUHART      PERKINS COIE LLP
    & SULLIVAN, LLP

/s/David A. Nelson                    /s/Dan L. Bagatell

David A. Nelson                        Dan L. Bagatell

Counsel for Appellant Google LLC

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

This brief complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it has been prepared using a proportionally spaced typeface and contains 6,993 words (excluding portions excludable by the rules).

Dated: September 19, 2025                  /s/Dan L. Bagatell

                                                        Dan L. Bagatell


**CERTIFICATE OF AUTHORITY**

I declare under penalty of perjury under the law of the United States that I have the authority of my co-counsel David A. Nelson to include his electronic signature on this brief.

Dated: September 19, 2025                  /s/Dan L. Bagatell

                                                        Dan L. Bagatell

## Certificate Regarding Confidential Material

This brief contains zero unique words (including numbers) marked confidential that were not marked confidential in previous briefs in this appeal. This number does not exceed the maximum of 15 words permitted by Federal Circuit Rule 25.1(d)(1)(A).

Dated: September 19, 2025                     /s/Dan L. Bagatell

                                                          Dan L. Bagatell

## Certificate of Service

I certify that I served a copy of the confidential version of this brief on appellee's counsel by sending electronic mails to the following addresses:

| Person Served | Service Address |
|---|---|
| Elizabeth Moulton | emoulton@orrick.com |
| Alyssa M. Caridis | acaridis@orrick.com |
| Will Melehani | wmelehani@orrick.com |
| Lauren A. Weber | lauren.weber@orrick.com |
| Harmann P. Singh | hsingh@orrick.com |

Dated: September 19, 2025                     /s/Dan L. Bagatell

                                                          Dan L. Bagatell